**UNITED STATES of America,
Appellee,**

v.

**James Joseph CULOTTA, Appellant.**

**No. 170, Docket 32198.**

United States Court of Appeals
Second Circuit.

Argued Nov. 8, 1968.

Decided July 15, 1969.

**1344**

William J. Gilbreth, Charles P. Sifton, Asst. U. S. Attys., Robert P. Morgenthau, U. S. Atty., for appellee.

Robert S. Rifkind, New York City, for appellant.

Before MEDINA and WATERMAN, Circuit Judges, and LEVET, District Judge.[*]

WATERMAN, Circuit Judge:

Appellant Culotta appeals from a judgment of conviction on count 1 of a three count indictment in which he had been charged with knowingly passing a counterfeit ten dollar Federal Reserve Note in violation of 18 U.S.C. § 472.[1] Appellant was found guilty of this crime by a jury. Judge Cannella, the trial judge, before submitting the count 1 to the jury, had dismissed count 2 which charged an unlawful transfer of a sec-

ond ten dollar bill, and count 3, which charged an unlawful possession under 18 U.S.C. § 472 of the counterfeit bills involved in the preceding two counts. Appellant received a sentence of ten years imprisonment which he is now serving.

In support of the charge in count 1 of the indictment the Government's evidence showed that on Saturday night, July 23, 1966, appellant was at the Brandon Pavilion, a night club in Greenwood Lake, New York, and that he there purchased drinks at the club's bar for himself and a male companion with a counterfeit ten dollar bill handed to Mario Peano, the bartender. Peano testified that after he placed the bill in the cash register and gave back the appropriate change he sensed something peculiar about the bill he had received, withdrew it, and showed to to James Sees, the manager of the Pavilion, who was also behind the bar at the time. Sees, after rubbing the bill with a wet thumb and producing a hole in the paper, called to the doorman at the Pavilion, Sidney Seftel, to stop a man from leaving the building. At Culotta's trial both Seftel and Sees identified Culotta as that man, but Peano was unable to do so. He did, however, testify at the trial that the man who passed him the counterfeit bill was the person whom he pointed out to Sees and whom he thereafter saw Sees approach and that he was the same person whom Sees called to Seftel to stop.

The doorman, Seftel, testified that, after he stopped Culotta, Sees confronted the defendant with the counterfeit ten dollar bill and demanded ten dollars in place of it, and that after a series of accusations and denials Culotta gave Sees another ten dollar bill and started to depart. During this argument between Sees and Culotta, Seftel, recalling

[*] Of the Southern District of New York, sitting by designation.

1. § 472 reads as follows:

§ 472. Uttering counterfeit obligations or securities

Whoever, with intent to defraud, passes, utters, publishes, or sells, or at-tempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

that the appellant and his companion had paid for their admission to the club with ten dollar bills, checked his cash box and uncovered two more counterfeit ten dollar bills. Thereafter, they again prevented Culotta's departure and called the police.

Captain Andrew Margillo of the Greenwood Lake police responded to the call. After having been shown two of the counterfeit bills and after having conversed with Sees and Seftel, Margillo arrested Culotta and searched him. At trial Margillo testified that in the appellant's coat pocket were 15 packets of genuine bills, each of which contained between $6.00 and $9.00, and on his person were a genuine ten dollar bill and four genuine one dollar bills and a marijuana cigarette.

Culotta argues that the district court erred in admitting into evidence the 15 packets of bills because they were seized during an unlawful search of his person. In a New York State criminal proceeding against Culotta arising out of these same events, in which Culotta was charged with the unlawful possession of marijuana, a motion to suppress these evidentiary items was granted because the state had not assumed its burden of going forward with proof, see People v. Malinsky, 15 N.Y.2d 86, 91 n. 2, 262 N.Y.S.2d 65, 209 N.E.2d 694 (1965), and therefore it had failed to show that there was probable cause to arrest Culotta for passing counterfeit bills and thus had failed to establish that the search incident to the arrest was legal.[2] Here, Culotta's pre-trial motion to suppress the packets of bills which were the fruits of the same search as the marijuana was denied by Judge Palmieri below without an evidentiary hearing on the grounds that appellant's affidavit lacked particularity. Subsequently, a similar objection made at trial was denied by the trial judge and the packets were received into evidence.

The district court rulings on the motions to suppress were not erroneous. First, the state court determination was not binding on the federal judges, and, even if it were, the question whether there was probable cause for the arrest was never decided by the state court. Second, Judge Palmieri was not required as a matter of law to hold an evidentiary hearing if appellant's moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested by appellant. See, e.g., Grant v. United States, 282 F.2d 165, 170 (2 Cir. 1960); Wright, Federal Practice and Procedure § 675 (1969). Appellant's moving papers recited only the barest factual allegations[3] which under the circumstances were hardly sufficient to require that Judge Palmieri hold an evidentiary hearing on the motion. Third, trial counsel's renewal of the motion at trial before Judge Cannella contained no new or additional facts which would have required a hearing on the issue at that time. See Fed.R.Crim.P. 41(e). In any event, we find that a hearing upon the motion or upon the propriety of the trial objection would have been fruitless for there was ample evidence to establish that there was probable cause for

---

2. The decision and order of the Justice Court for the Village of Greenwood Lake, New York, dated October 3, 1966, stated:
   "The testimony and the record indicate no proof by the People that the primary arrest was made with probable cause and in fact gave little or no information other than that the arrest was made for forgery and that money was found in the possession of the defendant. There is no testimony that this money was counterfeit, nor is there described any circumstances for the arrest by the police."

3. Defendant's motion to suppress the fruits of the seizure on July 23, 1966 contains no relevant allegations except the following:
   2. On July 23, 1966, in the Village of Greenwood Lake, New York, I was arrested by local police officers. The officers showed me no search or arrest warrant, and I believe that my arrest was without probable cause and illegal. (Defendant's affidavit, sworn to June 28, 1967).
   A prior affidavit by defense counsel was equally vague.

the arrest and that the challenged search was made contemporaneously with the arrest and as part of the arrest.

■ The admissibility of the packets of bills is also challenged as having no probative value. Contrary to appellant's assertion, the packets tended to prove that appellant had passed counterfeit ten dollar bills knowing that the bills were counterfeit and that appellant's passing of the ten dollar counterfeit bill to Peano was not an innocent happenstance but was part of a conscious plan. The jury could well have inferred that Culotta would not have sorted his genuine money into packets in such a bizarre fashion unless he was passing counterfeit ten dollar bills.

■ It is next contended that the trial judge committed error in permitting a witness for the prosecution, a Mrs. Joella Scala, to testify over defense counsel's objection that she had been privy to a plot to concoct a falsified defense for Culotta that would contradict a claim that he tendered a $10 bill. According to Mrs. Scala's testimony, Culotta's sister, Mrs. Marie Fedele, called Mrs. Scala and said that "her brother had gotten picked up for counterfeit and pot" and asked her to provide a defense for Culotta by testifying that she and Vincent Leone had accompanied Culotta to the Brandon Pavilion on the night in question and that Culotta had paid the bartender with a five dollar bill. At the time of the alleged discussions between the two women the appellant was in custody in Goshen, New York. But Mrs. Scala testified, and the defense did not deny, that she and Culotta's sister visited the appellant and told him of the scheme. Mrs. Scala further testified that as far as she knew the plan was devised entirely by Mrs. Fedele and that when Culotta was informed of the plan he was silent except to object to the inclusion of Vincent Leone as one of his companions because Leone had a criminal record.

Appellant concedes that evidence that a defendant in a criminal prosecution has attempted to suborn a witness or has planned to present perjurious testimony or otherwise to fabricate evidence is admissible against a defendant as tending to show a consciousness of guilt. Wilson v. United States, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Werner, 160 F.2d 438, 440–441 (2 Cir. 1947); United States v. Freundlich, 95 F.2d 376, 378–379 (2 Cir. 1938); Di Carlo v. United States, 6 F.2d 364, 368 (2 Cir. 1925); Wigmore, Evidence, § 278 (3d ed. 1940). Nevertheless, he argues that the trial judge erred here in not excluding the testimony because the Government had failed to show that the appellant either invented, endorsed, or participated in the alleged plan to falsify testimony; for his disapproving remarks concerning the participation of Vincent Leone, appellant urges, tend to show repudiation by him of the scheme devised by his sister, rather than an endorsement of it. We disagree. We think it was for the jury to determine whether the appellant's objection to Leone's involvement and his silence as to the rest of the scheme were enough to show he approved of the plan.

■ The injection into witness Scala's testimony of the word "pot" may well have been unfortunate and perhaps could have been the basis for a motion for a mistrial. See Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 93 L.Ed. 168 (1948). But no such motion was made, nor was any motion made to strike the reference, nor was any request to charge with respect to it handed to the court. In light of the strong evidence against him this unfortunate reference most assuredly did not affect the substantial rights of the appellant.

■ At the trial prosecution witness Sees identified appellant. This identification is attacked on the ground that Sees had been exposed to allegedly suggestive pretrial identifications which had affected his judgment. On the facts of this particular case appellant's argument is wholly without merit. The

allegedly improper pretrial identifications were made some four months after Culotta's arrest. Prosecution witnesses Sees and Peano were asked by the police to identify Culotta from a series of eight or nine photographs. In this series all but appellant's photograph were of the standard "mug shot" type, full face and profile shots of the face, each photograph measuring 3½ inches by 2½ inches and bearing various dates and the inscription "N.Y.C. Police." Appellant's photograph, however, was 6 inches by 4 inches in size, was a full head to toe shot, and depicted therein was a card reading:

> "State police
> "Hawthorne, N.Y.
> "K–19435
> "7–24–66"

The date 7/24/66 was the day following Culotta's midnight arrest. Sees identified Culotta's photograph, but Peano was unable to associate the face of the man in the photograph with that of the man involved in the events at the Brandon Pavilion. Immediately after viewing the photographs Sees and Peano witnessed a lineup, in which Culotta participated without counsel being present. Again Sees, but not Peano, was able to identify appellant. Appellant, citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), argues that these pretrial photographic and physical lineups were "* * so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," Simmons v. United States, supra 390 U.S. at 384, 88 S.Ct. at 971, and that this allegedly prejudicial action denied him due process of law, for this pretrial procedure tainted Sees's courtroom identification at trial. But any reliance by appellant upon Simmons and Stovall, or, for that matter, even upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), even if Gilbert and

Wade were otherwise applicable (see Stovall v. Denno, supra) does not avail appellant in this case. Cases like Wade, Gilbert, Simmons and Stovall involve situations where the perpetrator fled the scene of the crime and was not detained or arrested at that scene, but sometime later a suspect is shown in a lineup or photographs of suspects are shown to the victim, or to witnesses. In all these and similar cases there was a period of time during which the perpetrator of the crime had been free and out of the sight of all witnesses to the crime; a period which would permit suggestive procedures and practices to have an effect. This was not the case here.

According to the trial testimony Peano pointed out to Sees a man who had just given Peano a questioned ten dollar bill. Sees saw the man and called to the doorman to stop the man from leaving. The man was stopped. With the man still in sight Sees proceeded to the door where he confronted the man with the counterfeit ten dollar bill. After a discussion the man started to depart but was again stopped when the doorman remembered the passing of two other similar bills. While the man was prevented from leaving, police were called and the man, still in the company of Sees, was arrested and then taken into custody. At no time was the man out of the sight of Sees after he had been pointed out by Peano. It is inconceivable that subsequent pretrial identification procedures, regardless of how unfair the procedures might be, could prejudicially influence the identification of a suspect when the suspect was never out of the sight of the identifying eyewitness who had caused him to remain at the scene of the crime until he was taken into custody.

If Peano as well as Sees had identified Culotta as the man who had passed the counterfeit ten dollar bill, appellant would have had a somewhat stronger foundation upon which to support his fragile claim of a prejudicial pretrial identification procedure. The perpetrator of the crime was out of

Peano's sight after Peano pointed him out to Sees. The essential link in the proof that Culotta passed the counterfeit bill at the bar was not Peano's identification of Culotta as the passer of the bill but Peano's testimony that he correctly pointed out to Sees the right man, whoever he was, and the testimony of Sees that he went to, and with the aid of a doorman stopped, the man who Peano pointed out to him.

The conviction below is affirmed.