**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Elizabeth BELLAMY, James Hunter, Mary Mann, and James D. Oree, Defendants-Appellants.**

**No. 380, Docket 34977.**

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1970.

Decided Jan. 4, 1971.

J. Michael Solomon, New York City, for defendant-appellant Hunter.

Robert L. Rosenthal, New York City, for defendant-appellant Mann.

Jacob W. Friedman, New York City, for defendant-appellant Oree.

Emanuel Molofsky, New York City, on the brief for defendant-appellant Bellamy.

Peter F. Rient, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D. N.Y., Jay S. Horowitz, Asst. U. S. Atty., of counsel), for plaintiff-appellee.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

**544**

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of conviction against Elizabeth Bellamy, James Hunter, Mary Mann and James D. Oree after a trial in the United States District Court for the Southern District of New York, Edmund L. Palmieri, Judge, and a jury for violation of 21 U.S.C. §§ 173, 174 and conspiracy to violate these statutes pursuant to 18 U.S.C. § 371 by receiving, concealing and facilitating the transportation of approximately 390 grams of heroin. On April 30, 1970 Judge Palmieri imposed the following prison sentences—Bellamy, five years on each count, the sentences to run concurrently; Hunter, seven years on each count, the sentences to run concurrently; Mann, five years on the conspiracy count; Oree, ten years on each count, the sentences to run concurrently. The defendants-appellants are presently serving their sentences. We find no error and affirm the judgment.

In August, 1967, James D. Oree approached one Dennis Copeman and asked him to run a "mill" for the packaging and distribution of narcotics which Copeman agreed to do. On several occasions over the next few months Copeman operated the "mill" for Oree. On November 29, 1967, Oree telephoned Copeman and told him that another shipment of heroin had come in. He then directed him to go to 1401 University Avenue in the Bronx that evening to package the narcotics. At noon on the same day agents of the Federal Bureau of Narcotics were informed by a known reliable informant that the "mill" was to be in operation that evening, and they undertook surveillance of these premises.

At approximately 2 p. m. the agents saw Oree drive up to the apartment and emerge from his car with a suitcase. An agent followed him into the building and saw him enter apartment 3G. Shortly thereafter, the agents observed Mann, Hunter, and several other persons enter the apartment. One of the agents then departed to secure a search warrant for the apartment. Copeman arrived about 5:30 p. m. and at the trial

testified that when he entered the apartment Bellamy, Mann, Hunter and others were in the apartment, and they thereafter proceeded to package the narcotics.

At approximately 8 p. m. Oree returned to the apartment and directed Copeman to give Hunter 25 bundles of the packaged narcotics which he placed in a brown paper bag. Oree and Hunter then left. The agents had followed Oree into the building. As the two men left the building, Oree, who was carrying the brown paper bag, looked in the direction of the agents, stiffened, and shoved the bag to Hunter. At this time the agents placed Oree and Hunter under arrest and seized the bag containing the narcotics. Following the arrests of these two men, the agents saw Copeman and two other men emerge from the elevator. They also placed them under arrest and confiscated the suitcase containing the remainder of the narcotics. The agents then executed the search warrant for the apartment and arrested the persons still there including Bellamy and Mann. At trial, the only witness aside from the agents who testified against the defendants was Copeman, whose trial on the same indictment had been severed at the request of the government.

█ The appellants' first contention is that the government agents lacked sufficient probable cause to arrest Hunter and Oree as they emerged from the building, and that the evidence seized from Hunter at that time should therefore have been suppressed. The argument is without merit. The agents acted upon detailed information received from a reliable informant. Their own investigation and observations confirmed this information, and in fact justified the issuance of the search warrant. Moreover, the highly suspicious conduct of Oree and Hunter as they left the building provided additional probable cause for the arrests. The circumstances in this case clearly meet the test for warrantless arrests articulated by the Supreme Court. In Draper v. United States, 358 U.S. 307, 313, 79 S.Ct.

329, 333, 3 L.Ed.2d 327 (1959) the Court noted:

> "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, *supra*, 388 U. S. at page 175, 69 S.Ct. at page 1310. Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U. S. 132, 162, 45 S.Ct. 280, 288. [358 U.S. at 313.]

■ Defendants contend that denial of a separate hearing on the issue of probable cause for arrest was error. Motions to suppress for lack of probable cause for search of the premises and defendants were denied for lack of factual allegations in support of the motions. One week before the scheduled trial date new counsel for Hunter moved to suppress on the ground of lack of probable cause for arrest. The motion was denied as untimely under Federal Rules of Criminal Procedure 41(e) without prejudice to renewal on the basis of trial testimony. When renewed at the close of the government's case it was denied on the basis of the testimony and proof at trial.

Appellants' contentions are not well taken. The trial had been delayed by a series of earlier motions. The affidavit was sufficient ground for the search warrant and counsel had presented no fact calling it into question. While the evidence was seized not in the search under the warrant but in the search incident to the arrest, the court properly considered the showing of probable cause for the search in determining whether the belated attack on the arrest was designed for trial delay.

In any case, the evidence developed on trial makes it quite plain that a hearing on probable cause for the arrest would have been of no avail to Hunter, cf. United States v. Culotta, 413 F.2d 1343, 1345–1346 (2d Cir.), cert. denied, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1969). We find no reversible error here.

■ The defendants also contend that there was insufficient evidence as to the guilt of Bellamy and Mann to allow the case to go to the jury. This contention is also without merit. Copeman testified that on virtually every occasion when the mill was in operation the packaging was done in Bellamy's apartment, that on each occasion both Bellamy and Mann were present and participated in the packaging operation including November 29, 1967. Since the jury returned verdicts of guilty, if there was substantial evidence, the evidence must be viewed most favorably to the government. Glasser v. United States, 315 U. S. 60, 62 S.Ct. 457, 86 L.Ed 680 (1942); United States v. Tropiano, 418 F.2d 1069, 1075 (2d Cir. 1969). Copeman's testimony as to the participation of Bellamy and Mann was clearly sufficient to present a *prima facie* case.

■ Finally, appellants contend that Judge Palmieri erred in his instructions to the jury in that he failed sufficiently to caution the jury as to Copeman's credibility and that he indicated his own belief in defendants' guilt. These claims are also without merit. As to Copeman, Judge Palmieri said to the jury:

> Now, I want to talk about Copeman because so much was said about him during the course of the summations by counsel that his credibility has been greatly attacked. Of course, Copeman I think everybody will agree, is a despicable character. He not only admitted his guilt of these serious crimes but by his own testimony he admitted that as a youthful offender he was convicted of marihuana and robbery violations of law, he was later

convicted of first degree robbery and given a very long sentence of 20 to 30 years, which was later reduced, and then, in connection with his activity in this case, he was charged as a parole violator under New York State law and for that, and because he received stolen goods, he was sent back to jail, where he is now, and he admitted on the stand that he owed 15 years to New York State on the pending charges from which he was paroled.

Now, what are you going to do with a witness like that? You can disbelieve him because he is definitely no good, or should you give him some credence? That depends upon your common sense and good judgment. You know, witnesses come in all shapes and sizes, and just as it is possible for a despicable character to tell the truth, it is just as possible for a person with good character not to tell the truth. The precious gift that you ladies and gentlemen bring to the courtroom is that judgment which you exercise with respect to the truth and veracity of witnesses. You will have to decide the extent to which he is worthy of belief.

These instructions appear fully adequate under the circumstances and, in any event, no instructions as to Copeman were requested by defense counsel, nor was any objection made to the instructions as given.

■ The appellants also allege that Judge Palmieri used phrases which suggested to the jury his belief in appellants' guilt such as referring to Oree as "the ringleader and entrepreneur," or stating that the agents arrived "just in the nick of time" catching the defendants "literally redhanded," or that "the evidence against Hunter * * * looms very large in this case." In each instance of alleged prejudice, the court preceded its remarks with statements such as "if you accept all the evidence submitted by the government and draw from it the inferences which they suggest * * *" and at the conclusion of the instructions the court stated: "please do not attribute to any of the comments that I have made any desire to inflict any conclusion on you."[1] Although Judge Palmieri's choice of words might, in a few instances, have been different, appellants present no convincing arguments that they were sufficiently prejudicial to justify a reversal.

Judgment affirmed.

1. See United States v. Kahaner, 317 F.2d 459 (1963):

It is quite impracticable for a trial judge, summarizing a case to a jury, to develop each piece of evidence offered in support of an indictment, each item offered in rebuttal, and each opposing inference sought to be drawn. An appellate court reviewing such a summary not only must consider it as a whole but must place it in the setting created by the jury's hearing of the evidence and the summations of counsel. Many of appellants' contentions on this phase of the case read as if Judge Weinfeld alone had heard the witnesses and the summations, with the jury receiving nothing but the charge. Although on such a hypothesis the summary here would not have adequately conveyed the case of either side, nothing follows from that; if the judge had thought the jury was solely dependent on his summary, he would surely have made a quite different one. True, "The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him" [citations omitted]; but if this were pressed to the extent of requiring the inclusion of every thrust and counterthrust, the judge would be taking over the province of the witnesses and of counsel. [317 F.2d at 479.]