UNITED STATES of America,

v.

Jean DEMOSTHENE, Defendant.

No. 03 CR. 1409(VM).

United States District Court, S.D. New York.

July 20, 2004.

Jessica A. Roth, Assistant United States Attorney Criminal Division, New York City, for U.S.

## DECISION AND ORDER

MARRERO, District Judge.

## I. BACKGROUND

By Decision and Order dated June 3, 2004 (the "Order"), the Court granted the Government's various motions *in limine* to admit certain evidence at the upcoming trial of defendant Jean Demosthene ("Demosthene"). Demosthene has been charged in a two-count superceding indictment with possession of more than 500 grams of cocaine with intent to distribute, and with conspiracy to distribute more than 500 grams of cocaine. The Order also denied Demosthene's motions in limine to exclude certain evidence. *See United States v. Demosthene*, No. 03 Cr. 1409, 2004 WL 1243607 (S.D.N.Y. June 4, 2004).[1] Trial on this matter is currently scheduled to commence on August 3, 2004.

By letter dated July 9, 2004, Demosthene requests reconsideration of the Order with respect to the Court's denial of a hearing on whether the Pleasantville, New Jersey police officers who responded to the altercation on July 12, 2003 had probable cause to perform a search of Demosthene's vehicle without a search warrant. Demosthene focuses his challenge on the Court's reliance on several reports prepared by the police officers shortly after the incident and submitted by the Government in support of its motions *in limine*. Demosthene claims that it was improper for the Court to rely upon the unsworn hearsay contained in these reports without first conducting a hearing to establish the accuracy of the reports and the veracity of the officers who prepared them. For the reasons discussed below, Demosthene's request for reconsideration is denied.

## II. DISCUSSION

### A. STANDARD FOR RECONSIDERATION

■ Reconsideration of a court's previous order is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y.2000). Under Local Civil Rule 6.3, which governs motions for reconsideration,[2] the moving party must demonstrate controlling law or a factual matter before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to

---

1. The Court assumes familiarity with the underlying facts as discussed in the Order.

2. The Court is mindful that Local Rule 6.3 is a rule of civil procedure. In the absence of an analogous rule, however, courts in this district have applied the Rule 6.3 standards for reconsideration to criminal cases. *See, e.g., United States v. Ramerez*, No. 03 Cr. 0834, 2004 WL 1252940, at *1 (S.D.N.Y. June 7, 2004) (noting that courts in this district have adopted the Rule 6.3 standard to criminal cases); *United States v. Delvi*, No. 01 Cr. 0074, 2004 WL 235211, at *1 n. 2 (S.D.N.Y. Feb. 6, 2004) (concluding that the Rule 6.3 standard applies to criminal cases); *United States v. Mottley*, No. 03 Cr. 0303, 2003 WL 22083420, at *1 (S.D.N.Y. Sept. 9, 2003) (employing the Rule 6.3 standard to a motion to reconsider a denial of criminal defendant's motion to suppress evidence). Accordingly, this Court will employ the Local Civil Rule 6.3 standard to Demosthene's request for reconsideration.

alter the court's decision. *See SEC v. Ashbury Capital Partners, L.P.*, No. 00 Civ. 7898, 2001 WL 604044, *1· (S.D.N.Y. May 31, 2001) (citing *AT & T Corp. v. Community Network Servs., Inc.*, No. 00 Civ. 316, 2000 WL 1174992, * 1 (S.D.N.Y. Aug. 18, 2000) and Local Civil Rule 6.3). Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence. *See Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992).

A motion for reconsideration is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided. *See Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). Consistent with these objectives, the strict parameters of Local Civil Rule 6.3 are designed to ensure "the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *See Ashbury*, 2001 WL 604044, at *1 (citing *Carolco Pictures, Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Local Civil Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. *See Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y.1999); *In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (noting that a motion for reconsideration is not an opportunity for the moving party to "reargue those issues already considered when a party does not like the way the original motion was resolved."). Against this standard, the Court considers Demosthene's arguments for reconsideration.

## B. THE POLICE REPORTS

 When ruling on the admissibility of evidence, a court is not bound by the federal rules of evidence and may rely upon hearsay and other reliable evidence. *See* Fed.R.Evid. 1101(d)(1); 104(a); *see also Bourjaily v. United States*, 483 U.S. 171, 177–78, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Yousef*, 327 F.3d 56, 145 (2d Cir.2003). In these circumstances, a defendant is not automatically entitled to a hearing whenever he challenges the admissibility of evidence in advance of trial. *See United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969). Rather, a defendant must demonstrate that there exists a disputed issue of material fact, typically through affidavits from individuals with personal knowledge. *See United States v. Gillette*, 383 F.2d 843, 848–49 (2d Cir.1967) (citations omitted).

 Under these principles, the Court finds that it properly relied upon the police reports, arguably the most reliable evidence as to the details of the events of July 12, 2003, in ruling on the parties' motions *in limine*. These reports represent the officers' contemporaneous memorialization of their investigation of the July incident. The Government is not presently seeking to admit these reports at trial, but rather, provided them to the Court only in support of their motions. As such, the Court was entitled to rely upon these submissions in ruling on evidentiary issues.

Although Demosthene has continuously contended that a hearing is required, at no time has he challenged the authenticity of the reports, and only now challenges the accuracy of the reports and the veracity of the officers who prepared them. Indeed, the crux of Demosthene's argument in his May 24, 2004 submission to the Court is

that the information contained in the reports do not support the inference that the July incident was narcotics related. Thus Demosthene impliedly concedes their use for purposes of the parties' motions.

Demosthene's challenges to the content and interpretation of the police reports, while certainly permissible as part of his defense, are properly raised at trial through vigorous cross-examination and arguments to the jury. As the Government has already indicated, it will seek to introduce evidence at trial concerning the altercation that occurred on July 12, 2003, presumably through the in-court testimony of witnesses and/or documentary evidence. Thus, Demosthene will have an opportunity at trial to challenge the Government's theory that the July incident was narcotics related and that it is evidence that Demosthene participated in a narcotics conspiracy as charged in the indictment. These matters are properly left for Demosthene to argue to the jury in his defense and do not necessitate a hearing to establish the accuracy of the reports and the veracity of the individual police officers. Accordingly, the Court finds that it properly relied on the police reports to determine that the police officers had probable cause to search Demosthene's vehicle under the automobile exception to the warrant requirement. For this reason, and those discussed in the Order, the Court discerns no basis upon which to grant a hearing on this question.

With regard to disputed issues of fact, the only affidavit Demosthene submitted was his own, in which he attests that the money seized from his vehicle on July 12, 2003 was not in plain view. The Court finds that Demosthene's affidavit does not warrant a hearing. First, the affidavit does not address the numerous other information described in the police reports surrounding the July incident, the details of which the Government seeks to introduce, and upon which the Court determined that the officers had probable cause to search the vehicle.

Second, as discussed in the following section (and as discussed in the Order), although Demosthene's affidavit may create a disputed issue of fact with regard to the plain view exception, the evidence found in Demosthene's vehicle would nonetheless be admissible because it would have ultimately been discovered through independent and lawful means. Because Demosthene has failed to demonstrate that the Court overlooked controlling law or material facts in the Order, the Court reaffirms its prior holding that the police officers had probable cause to believe that Demosthene's vehicle contained contraband or evidence during the July 2003 incident outside his mother's residence, and thus, lawfully searched the vehicle pursuant to the automobile exception to the warrant requirement.

## C. THE SEARCH WARRANT

In the Order, the Court held that even if the search of Demosthene's vehicle was unlawful when it was performed, the evidence obtained therefrom would nonetheless be admissible under the independent source and inevitable discovery doctrines. The Court's holding in this regard was based, in part, on the warrant to search Demosthene's vehicle that was issued a few days after the incident from a New Jersey state court judge.

■ With regard to the search warrant, Demosthene asserts that a hearing is required because the copy of the affidavit included in the record is unsworn. In his July 15, 2004 submission to the Court, Demosthene argues, in essence, that this Court should reject the validity of the warrant because the only factual basis for its issuance is the unsworn affidavit.

536

Thus, Demosthene concludes that this Court cannot make an independent determination of the underlying facts upon which the state court judge issued the warrant. The Government responds that the warrant was obtained via an oral application to the judge, pursuant to local procedures. As discussed below, the Court is not persuaded that Demosthene has met his burden of rebutting the presumption of validity that attaches to a warrant and that a hearing is required.

 A search warrant is presumptively valid. *See United States v. Awadallah,* 349 F.3d 42, 64 (2d Cir.2003). Accordingly, this Court grants substantial deference to the New Jersey state court that·issued the warrant, and any "doubts should be resolved in favor of upholding the warrant." *United States v. Rosa,* 11 F.3d 315, 326 (2d Cir.1993) (quoting *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir. 1983)). In order to challenge the validity of the search warrant on the grounds that it issued on false information, Demosthene must demonstrate that "false statements were made knowingly and intentionally, or with a reckless disregard for the truth and that they were necessary to the finding of probable cause." *Id.* (citing *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

Demosthene does not directly challenge the warrant itself, but rather, requests a hearing to determine whether the officers indeed had probable cause to search his vehicle. The Court finds that this is insufficient to overcome the presumption of validity that attaches to an issued warrant. Although the application was made to the state court judge orally, and thus, there is no record of precisely what the state court judge relied upon in issuing the warrant, Demosthene's general questioning of the papers submitted in support of the warrant is insufficient to meet his burden of rebutting the presumption that the warrant is valid. In any event, because the Court finds that the officers had probable cause to search Demosthene's vehicle under the automobile exception, as discussed in the Order, there no reason to belabor the issue of the search warrant any further.[3] Because Demosthene has failed to meet the standards for reconsideration under Local Rule 6.3, his request for reconsideration is denied.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the request of defendant Jean Demosthene ("Demosthene") for the Court to reconsider its Decision and Order dated June 3, 2004 with respect to the Court's denial of a hearing on the question of the legality of the search of Demosthene's vehicle on July 12 and 14, 2003 is DENIED.

**SO ORDERED.**

---

**3.** For the same reason, the Court need not address Demosthene's request for reconsideration of whether the consent of Demosthene's wife was valid under the circumstances.