UNITED STATES of America,

v.

Victor GUADALUPE.

No. CIV.3:04 CR 96(PCD).

United States District Court,
D. Connecticut.

Aug. 19, 2004.

Brian P. Leaming, Ronald Scott Apter, U.S. Attorney's Office, Hartford, CT, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Richard S. Cramer, Wethersfield, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION TO SUPPRESS

DORSEY, District Judge.

Defendant moves to suppress. For the reasons stated herein, Defendant's motion [Doc. No. 14] is **denied**.

### I. Background

On June 21, 2004, the Court granted Defendant's motion to suppress absent opposition [Doc. No. 18]. The government filed a motion for reconsideration, which was granted in a ruling setting forth deadlines for the parties to fully brief the issue [Doc. No. 22].

Defendant was arrested on November 19, 2003 at 214 Westland Street, Hartford, Connecticut. The Government alleges

that earlier that day, a police officer had observed Defendant and Naquiven Colon loitering outside of a market located on the first floor of this address, and that several hours later multiple Hartford police marked units responded to this location to disperse numerous individuals trespassing and/or loitering at the market. Defendant denies that he or Colon had been at this location earlier in the day.

The Government alleges that later the same day, Officer Tom Harvey observed Defendant and Colon standing in front of the market, and that when he entered the area in his marked cruiser, they fled by running into a doorway accessing the common stairway for residential apartments. Officer Harvey exited his vehicle and pursued them on foot. Officer Stephen Pepler, who was in a separate vehicle, observed Harvey in a foot pursuit and followed him into 214 Westland Street. Officer Harvey observed Defendant and Colon exit a second floor apartment and continue towards the third floor. Defendant denies that he was at or near 214 Westland Street at any time earlier that day, instead alleging that he had encountered Colon (his nephew) at a housing project and transported Colon to Defendant's mother's residence at 214 Westland Street.

The parties dispute what happened on the third floor. Defendant alleges that he entered his mother's third floor apartment, closed the door, which he then partially opened in response to a knock from the police. The Government alleges that Colon entered the apartment and that the police stopped Defendant before he entered. During the scuffle, Officer Pepler observed Defendant throw a gun into the apartment Colon had entered. Defendant was secured and arrested by multiple officers, and during the search incident to arrest a second gun was found hidden on Defendant's person. He was charged with Criminal Trespass, Interfering with a Police Officer, Narcotics Possession (based on the seizure of marijuana), Carrying a Pistol without a Permit, and Criminal Possession of a Firearm.

On April 1, 2004, the federal Grand Jury returned a one-count Indictment against Defendant charging him with Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

Defendant moves to suppress "all handguns seized from his person or home on November 19, 2003."

## II. Discussion

### A. Entitlement to Evidentiary Hearing

A defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing. *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969). Suppression of evidence is not appropriate merely upon a defendant's conclusory, non-particularized allegations of unlawful official behavior. *Id.* To justify a hearing, an affidavit of someone with personal knowledge of the underlying facts must be submitted. *United States v. Gillette*, 383 F.2d 843, 848–49 (2d Cir.1967). A defense attorney's declarations are insufficient to meet this burden. *See id.* at 848 (an attorney's affidavit that does not allege personal knowledge of disputed facts is inadequate to justify a suppression hearing). Accordingly, as no affidavit has been submitted by someone with personal knowledge of the facts, Defendant has not met his burden of demonstrating disputed factual issues to justify an evidentiary hearing.

### B. Seizure of Firearms

Defendant alleges that the seizure of firearms from the apartment and his person violated his Fourth Amendment rights.

### 1. Seizure of First Firearm from Apartment

Defendant argues that he has standing to challenge the search of his mother's apartment, because as a frequent visitor he has a reasonable expectation of privacy there. As noted above, Defendant has not submitted an affidavit of someone with personal knowledge to support his version of the events. The Officers, pursuing Defendant and lawfully on the premises, observed Defendant, who was in the hall, toss the gun into the apartment, and the discarded gun was in plain view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

 Moreover, where exigent circumstances exist police officers may enter a home without a warrant. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Here, Officers Harvey and Pepler observed Defendant toss the gun into the apartment which Officer Harvey had just seen Colon enter. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir.1990). The Officers observed Defendant throw a gun into an apartment where his companion had just taken refuge. At that time, the Officers were engaged in a struggle with Defendant. Under these circumstances, the unsecured gun clearly presented an imminent threat to the Officers and other occupants of the building. Accordingly the Officers were justified in entering the premises to seize the gun.

 An alternative basis to deny Defendant's motion is his voluntary abandonment of the gun. "When a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property." *United States v. Lee*, 916 F.2d 814, 818 (2d Cir.1990). In determining whether there has been an abandonment, the district court must focus on the intent of the person who is purported to have abandoned the property. *United States v. Moskowitz*, 883 F.2d 1142, 1147 (2d Cir.1989). Defendant's argument that he "was trying . . . not to irrevocably lose control over the gun but simply hide it from the arresting officers so that he would not be charged as he has been" does not support the conclusion that he did not abandon the gun. Defendant argues that *Smith v. Ohio*, 494 U.S. 541, 543–44, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990), supports his argument because in *Smith* it was found that no abandonment occurred "when a defendant was about to be arrested and tossed a bag onto a hood of a car." Def. Mem. at 9 (citing *Smith*, 494 U.S. at 543–44, 110 S.Ct. 1288). In the state underlying case, the Ohio Supreme Court noted that there was no abandonment where the defendant "was, at most, only two steps away from the bag at any time." *State v. Smith*, 45 Ohio St.3d 255, 263 n. 6, 544 N.E.2d 239 (Ohio 1989). The present case is distinguishable, because when Defendant tossed the gun he put a dangerous weapon into plain view, and, unlike in *Smith* where the illegal contraband only two steps away was not discernable without seizing and opening the bag, here it was readily obvious that the object tossed inside the apartment was a gun, which, as discussed above, posed an immediate threat to the safety of the Officers and others in the premise. *See*

*Smith,* 494 U.S. at 542, 110 S.Ct. 1288 ("No contention has been raised in this case that the officer's reaching for the bag involved a self-protective action necessary for the officer's safety").

Accordingly, the warrantless entry into the apartment to secure the weapon did not violate Defendant's Fourth Amendment rights.

## 2. Seizure of Second Firearm from Defendant's Person

Defendant generally challenges the seizure of the second gun from his person. He does not set forth a legal basis for this challenge.

▮ The Officers found the second gun after effectuating Defendant's arrest for Criminal Trespass, in violation of CONN. GEN. STAT. § 53a–107. After arresting Defendant in the building's common hallway, the Officers observed a second gun falling through his pants. As noted, Defendant has not submitted an affidavit of someone with personal knowledge of the underlying facts, and his factual contention that the arrest occurred inside the apartment is contradicted by the police report, which indicates that the arrest occurred in a common hallway. "Under the Fourth ... Amendment[ ], an arresting officer may, without a warrant, search a person validly arrested." *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). "The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence." *Id.* "The fact of a lawful arrest, standing alone, authorizes a search." *Id.* The search for the second gun, incident to a lawful arrest, does not violate Defendant's rights under the Fourth Amendment.

▮ In addition, the gun protruding from Defendant's pants was plainly visible to the Officers and thus seizing the gun is supported by the plain view doctrine. Although warrantless searches are presumptively unreasonable, where an object is in plain view, neither its observation nor its seizure involve an invasion of privacy. *Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In addition to the evidence being plainly visible, its incriminating nature must be "immediately apparent" to the officer before it may be lawfully seized. *Horton v. California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112(1990). Here, the Officers were in a common hallway of a residential apartment building and had probable cause to arrest him. After arresting him the second gun was observed protruding from his pants. The observation of a dangerous weapon on a suspect who fled from the police and was resisting arrest justified immediate seizure of the weapon. As discussed above, an exigent circumstance existed which posed a threat to the safety of the Officers and others.

▮ Assuming *arguendo* that the arrest was invalid, the Officers had reasonable suspicion to stop and frisk Defendant. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[W]here a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot and that persons with whom he is dealing may be armed and presently dangerous ... he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." *Terry,* 392 U.S. at 30, 88 S.Ct. 1868. A defendant's presence in a high crime area coupled with his unprovoked flight upon observing a police officer

constitutes reasonable suspicion of criminal activity. *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"). Here, Defendant was standing in a high crime "no trespassing" area. Upon Officer Harvey's arrival at the area Defendant and Colon fled. Before the Officers were able to secure Defendant they observed him discarding the first gun, which justifiably escalated their suspicion that criminal activity was afoot. Searching and seizing the second gun protruding from Defendant's pants did not violate Defendant's Fourth Amendment rights. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868 (approving "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime").

### III. Conclusion

For the reasons discussed herein, the Ruling granting Defendant's motion to suppress absent opposition [Doc. No. 18] is hereby **vacated.** Defendant's motion to suppress [Doc. No. 14] is **denied.**

SO ORDERED.