[Cite as *State v. Stonier*, 2013-Ohio-2188.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2012 CA 00179 |
| MANDALINA RAE STONIER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  2012 CR 00662


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 24, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       KENNETH W. FRAME
PROSECUTING ATTORNEY                  ASSISTANT PUBLIC DEFENDER
RONALD MARK CALDWELL                  200 West Tuscarawas Street
ASSISTANT PROSECUTOR                  Suite 200
110 Central Plaza South, 5th Floor    Canton, Ohio  44702
Canton, Ohio  44702-1413

*Wise, J.*

{¶1}  Appellant Mandalina Stonier appeals the July 26, 2012, decision of the Stark County Court of Common Pleas denying her motion to suppress.

{¶2}  Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶3}  On June 29, 2012, Appellant Mandalina Stonier was arraigned in the Stark County Court of Common Pleas on one count of Possession of Cocaine, a felony of the fifth degree, and one count of Possession of Drugs, a misdemeanor of the first degree.

{¶4}  On July 10, 2012, Appellant filed a motion to suppress evidence.

{¶5}  On July 25, 2012, at the hearing on the motion to suppress, the trial court heard testimony from Alliance Police Officer Mark Welsh, who testified to the following events:

{¶6}  On April 21, 2012, at approximately 9:50 p.m., Officer Welsh was patrolling the parking lot of the Alliance Save-A-Lot store when he noticed a pickup truck parked by the store despite the fact that the store was closed.  The vehicle was the only vehicle parked there.

{¶7}  Officer Welsh observed Appellant, alone in the vehicle, hunched over, doing something in the center of the vehicle. Welsh became concerned about criminal activity based on the "fact that she was sitting in front of a business that's been closed for almost an hour." Welsh testified that he "wasn't sure if there was a B & E going on or what was happening there, so that's why [he] was suspicious initially." (T. at 8).

{¶8} Officer Welsh stated that he pulled up behind the pick-up truck in order to run the license plate through LEADS. When Appellant saw him, she immediately began to drive away without turning her headlights on, which further aroused Welsh's suspicions. (T. at 5-7, 9, 18, 26). Officer Welsh followed the pick-up truck as it drove through the plaza parking lot, passing four of the businesses located there. Appellant eventually pulled into a parking spot, and began exiting her vehicle at the same time the officer turned on his overhead lights to effect a stop. (T. at 9, 24, 25, 26-27).

{¶9} Officer Welsh approached Appellant as she was getting out and asked her what she was doing there, and she replied that she was buying groceries. Officer Welsh asked her for her driver's license. Officer Welsh testified that he found it suspicious that Appellant fumbled for her license for so long and that although he could see she had a wallet, she wouldn't open up her wallet. (T. at 10-11). He stated that she kept saying she couldn't find her license and that she did not know where it was. *Id*. Finally, after he suggested maybe it would be in her wallet, she opened it and said oh, there it is. *Id*. He observed that she was so nervous that she kept repeating herself and wouldn't look at him. *Id*.

{¶10} While he was waiting and observing Appellant, he noticed a pocketknife clipped to Appellant's left pocket and further observed a screwdriver on the floor in the console area.

{¶11} Officer Welsh stated that he was unable to see everything Appellant was doing inside the passenger compartment of the pick-up truck, due to its elevated height, so he ordered Appellant to exit the vehicle for his own safety

{¶12} After Appellant exited the vehicle, Officer Welsh took possession of the knife from Appellant but remained concerned about whether she had more weapons. (T. at 7-8, 19, 22, 28). Officer Welsh asked Appellant if she had any more weapons, which she denied. Having already observed the screwdriver, he looked into the opened truck. He recalled that Appellant kept getting closer behind him as he looked, and he eventually had to tell her more than once to stay back.

{¶13} While looking for other possible weapons, Officer Welsh observed a baggie of cocaine in the center console area. (T. at 11-12). Officer Welsh asked Appellant what was in the baggie, and she initially denied knowing what it was. Appellant eventually admitted that it contained cocaine, but claimed that it belonged to either her boyfriend or to her uncle. Welsh then arrested Appellant for possessing the cocaine. (T. at 12, 14).

{¶14} By Judgment Entry filed July 26, 2012, the Court overruled Appellant's Motion to Suppress.

{¶15} On August 1, 2012, Appellant entered a plea of no contest to the charges in the indictment and was found guilty. The trial court ordered a pre-sentence investigation.

{¶16} On August 29, 2012, the trial court sentenced Appellant to a two (2) year term of probation.

{¶17} Appellant now appeals, assigning the following error for review:

**ASSIGNMENT OF ERROR**

{¶18} "I. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS."

**I.**

{¶19} In her sole Assignment of Error, Appellant argues the trial court erred in denying her motion to suppress. We disagree.

{¶20} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 486; *State v. Guysinger* (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623.

{¶21} As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶22}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *See State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20.

**{¶23}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews,* 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). "However, not every contact between a police officer and citizen implicates the Fourth Amendment. 'Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a "seizure" has occurred.' " *State v. Richardson,* 5th Dist. No. 2004CA00205, 2005-Ohio-554, quoting *Terry, supra*, at 19, fn. 16.

**{¶24}** In her motion to suppress, Appellant argued that the officer stopped her vehicle without a reasonable, articulable suspicion of criminal activity as required by *Terry v. Ohio* (1968), 392 U.S.1.

**{¶25}** During the suppression hearing, the trial court inquired as to the focus of Appellant's challenge:

**{¶26}** "THE COURT: Counsel, am I correct that the only thing that is before this court you're disputing, I thought was the initial stop.

**{¶27}** "…

**{¶28}** "All the motion says is Defendant avers she was driving a vehicle and obeying all traffic laws. Officer stopped the vehicle without legal cause to do so. The

Defendant requests a suppression of all evidence obtained by means of this illegal seizure of the Defendant. That's all it says.

{¶29} Now, all of a sudden I am hearing about other things that if, in fact, I don't buy that argument then there is the further argument. But at this point in time ask your questions, okay?" (T. at 13, 15).

{¶30} In overruling her motion, the trial court found:

{¶31} "The Officer at no time stopped the defendant even though it was his intent to stop her. The defendant was already parked when the Officer operated his lights. Thereafter, it was reasonable for him to make inquiry of the defendant. In observing the behavior of the defendant as stated on the record and his further observation of the contraband, the Court finds that the officer's conduct did not violate the defendant's constitutional rights and the seizure of the contraband was legal."

{¶32} On appeal, Appellant now changes the focus by arguing that the officer did not have reasonable, articulable suspicion to seize Appellant when he stopped her from exiting her vehicle.

{¶33} Crim.R. 47 provides in part:

{¶34} "An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit."

{¶35} In *City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, the Ohio Supreme Court found that "a prosecutor cannot be expected to anticipate the specific legal and

factual grounds upon which the defendant challenges the legality of a warrantless search", and held that  a defendant's motion to suppress must:

**{¶36}** "…  (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge."

**{¶37}**  In support, the Ohio Supreme Court cited the following:

**{¶38}** "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. *State v. Johnson* (1974), 16 Ore.App. 560, 567–570, 519 P.2d 1053, 1057. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. *Id. United States v. Culotta* (C.A. 2, 1969), 413 F.2d 1343, 1345; *Duddles v. United States* (D.C.App.1979), 399 A.2d 59, 61–62. Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal. *State v. Carter* (Utah 1985), 707 P.2d 656; *see, also, United States v. Di Stefano* (C.A. 2, 1977), 555 F.2d 1094; *United States v. Arboleda* (C.A. 2, 1980), 633 F.2d 985; *United States v. Hensel* (C.A. 1, 1983), 699 F.2d 18, 41; *State v. Kremer* (1976), 307 Minn. 309, 239 N.W.2d 476; *People v. Lyles* (1985), 106 Ill.2d 373, 87 Ill. Dec. 934, 478 N.E.2d 291."

**{¶39}**  In the case *sub judice*, we find that Appellant, by only raising the issue of the legality of the stop in her motion, waived the issue as to the interaction between Appellant and the police officer as she was attempting to exit her vehicle.

**{¶40}** However, even assuming *arguendo* that Appellant did not waive this issue, we would find the encounter between Appellant and the officer to be consensual.

**{¶41}** Ohio law recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Taylor,* 106 Ohio App.3d 741, 747–49, 667 N.E.2d 60 (1995).

**{¶42}** A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* at 747. A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747–48.

**{¶43}** The second type of encounter is a *Terry* stop or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. *Id.* at 748, 106 Ohio App.3d 741. Such a stop is valid if the officer had a reasonable and articulable suspicion of criminal activity. *Id.* at 749. However, for the propriety of a brief investigatory stop pursuant to *Terry,* the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding

circumstances" presented to the police officer. *State v. Freeman,* 64 Ohio St.2d 291, paragraph one of the syllabus (1980).

{¶44} Upon review, we find that the initial encounter between Appellant and the officer was a consensual encounter. Appellant argues the encounter was not consensual, that she submitted to the officer's show of authority and that she did not feel that she was free to leave. We disagree.

{¶45} In the instant case, Appellant had stopped her vehicle on her own accord and was in the process of exiting her vehicle when she was approached by the police officer. The police officer asked for her driver's license and inquired as to her reason for being in the empty parking lot. Appellant provided the officer with a suspicious answer that she was buying groceries and further engaged in nervous and somewhat unresponsive behavior. While Appellant was searching for her license, the officer noticed a knife clipped to her belt. It was at this point that the officer asked Appellant to exit her vehicle so that he could search her and her vehicle for weapons.

{¶46} Based upon the foregoing, we find that the initial encounter between the officer and Appellant was consensual. Appellant's subsequent behavior provided the officer with reasonable, articulable suspicion to further investigate in this case.

**{¶47}** Appellant's sole Assignment of Error is overruled.

**{¶48}** For the foregoing reasons, the decision of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

_____

_____

_____

JUDGES

JWW/d 0509

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                            :
                                         :
    Plaintiff-Appellee                   :
                                         :
-vs-                                     :        JUDGMENT ENTRY
                                         :
MANDALINA RAE STONIER                    :
                                         :
    Defendant-Appellant                  :        Case No. 2012 CA 00179


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


_____

_____

_____
                   JUDGES