[Cite as *State v. Yacobucci*, 2019-Ohio-36.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18 CAC 07 0055 |
| DAVID YACOBUCCI | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Delaware
                                  Municipal Court, Case No. 17TRC19450

JUDGMENT:          Affirmed

DATE OF JUDGMENT ENTRY:          January 8, 2019

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHRISTOPHER BALLARD                SHAWN DOMINY
70 North Union Street                  1900 Polaris Parkway, Suite 450
Delaware, OH 43015                    Columbus, OH 43240

*Gwin, P.J.*

{¶1} Appellant appeals the May 25, 2018 judgment entry of the Delaware Municipal Court denying his motion to suppress. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} After an incident on October 14, 2017, appellant was cited with OVI in violation of R.C. 4511.19(A)(1)(a) and refusal of a chemical test while having a prior conviction in violation of R.C. 4511.19(A)(2).

{¶3} Appellant filed a motion to suppress evidence on November 1, 2017. Appellant argued his detention was not justified because the officers did not have the requisite reasonable suspicion of criminal activity to justify the detention of his vehicle; his continued detention was not justified; and his arrest was not justified. Appellant filed a supplemental memorandum to his motion to suppress evidence on May 9, 2018, arguing it was unreasonable and unlawful for the trooper to detain him for exercising his right to freedom of speech.

{¶4} The trial court held a hearing on appellant's motion on May 11, 2018. Trooper Darius Patterson ("Patterson") testified that on October 14, 2017 at 12:30 in the morning, he was on regular patrol while in uniform and in a marked cruiser. Trooper Lindsay Barrett ("Barrett") called for assistance and indicated to him there was a gentleman interfering with her traffic stop while she had multiple occupants in the car and a person out of the car for field sobriety tests. Barrett informed Patterson she was in the parking lot of Tequila Cowboy. Patterson stated he arrived on the scene and Barrett waved him down, gave him a description of the individual, and pointed to him walking towards the building. Barrett informed Patterson the individual was interfering with her

investigation by yelling at her during the stop and told Patterson she was concerned because the individual seemed intoxicated.

{¶5}    Patterson testified that when he first made contact with the individual, later identified as appellant, appellant was very irate, shouting at the top of his lungs, mixing between German and English, and continued on a long tirade shouting for quite some time.  They initially had a back-and-forth conversation, but Patterson let appellant vent his anger.  Patterson stated they were standing directly next to his vehicle on the driver's side.  Patterson noticed appellant had a strong odor of alcohol and his eyes were glassy and bloodshot.  Patterson believed appellant was impaired because he was irate, was screaming in German about the Gestapo, was positioning himself into a Nazi salute while screaming about the Gestapo, and seemed to be repeatedly shouting the phrases "Zieg Heil" and "we will stop you; fear the police."  Patterson did not arrest appellant and did not tell him he was not free to leave; however, Patterson thought appellant would be in investigative custody.

{¶6}    Patterson testified he was concerned for the safety of the public, as there were lots of people watching the events unfold.  Patterson testified to appellee's Exhibit 2, dash-cam video from his cruiser.

{¶7}    The video shows Patterson telling appellant, "Hey come here, Come over here.  Keep your hands out of your pockets."  Appellant is repeatedly screaming and shouting various phrases, such as "are you the Gestapo," "Zieg Heil," you need to be filming this for YouTube," "I don't want to be tasered or shot," and other German phrases for a continued period of time while Patterson is attempting to have a conversation with appellant and telling him he is not going to be shot or tasered.  Appellant repeatedly asks

Patterson if he "knows what I'm saying." The video shows Patterson's cruiser lights are activated and the encounter takes place in a parking lot, where multiple patrons are walking around and cars are coming in and out.

{¶8} Patterson stated that he and a sergeant from the Columbus Police spoke with the manager of Tequila Cowboy, who stated he did not feel comfortable having appellant inside the bar. The officers decided they were not going to press charges for obstructing a stop, but since appellant was clearly impaired, they decided the safe bet was for him to find a ride home. Patterson advised appellant not to drive, that he should get a ride, and then parted ways with appellant.

{¶9} After Patterson believed appellant was going to call for a ride, he ended his cruiser video and was about to leave, when he asked the Columbus Police what was going on. The Columbus officer told Patterson appellant jumped in a white Buick in the driver's seat and was attempting to leave the scene immediately after they told him to call for a ride. Patterson observed the white Buick pull out of the parking lot on to McCoy Center. Patterson made contact with appellant and administered field sobriety tests.

{¶10} On cross-examination, Patterson confirmed the information he received that night was that there was a guy in a white shirt yelling at Barrett and he detained appellant based on the information Barrett provided. Patterson thought appellant yelling at Barrett was obstructing official business because it appeared to Patterson that Barrett did not feel safe handling her business. When asked if Barrett told Patterson she didn't feel safe, Patterson stated "she wouldn't have asked for another unit if she would have." Patterson did not recall Barrett saying "disregard."

{¶11} Patterson stated he had his cruiser lights on when he got around the parked cars and had his uniform on. Patterson testified he gave appellant instructions to "hey, come over here. Over here. Keep your hands out of your pockets." Patterson's gun was not drawn.

{¶12} Sergeant Chris Wheeler ("Wheeler") was finishing up a traffic stop on the night of October 14, 2017 and overheard some of the traffic stop Barrett was making. He could hear some shouting and could tell she was concerned someone was interfering with her traffic stop. Wheeler stated Barrett is a very confident individual who does not normally call for back-up unless she feels she needs it and he could tell she needed some back-up. Barrett told Wheeler she was conducting a stop and appellant kept going back and forth during her stop yelling, being very disruptive, and making it unsafe for her to conduct her business. Barrett expressed to him that she felt unsafe. Wheeler stated he could tell appellant was highly intoxicated. In regards to whether to charge appellant, Wheeler spoke with Columbus police officers and made the decision that, if appellant could get a ride and leave the premises, they would not charge him because he was trying to give appellant the benefit of the doubt. Barrett indicated to Wheeler that appellant was yelling at her and walking around her area of traffic where she couldn't focus on her stop.

{¶13} On cross-examination, Wheeler confirmed he did not see appellant near Barrett. Wheeler also reviewed the video from Barrett's dash-cam. Wheeler stated Barrett turned to appellant and directed her attention away from her original suspect because either something was said or something must have startled her. Wheeler could not understand what appellant was yelling, but stated it was interfering with the traffic

stop. Wheeler stated Barrett stated "she can disregard" one minute after she called for backup.

{¶14} The video shows appellant walking towards Barrett. Appellant is behind her with his hands in his pockets and is a few feet away from her. Barrett is conducting a separate traffic stop with the driver and passengers in another vehicle. As Barrett is instructing the other driver to get out of the vehicle, she turns toward appellant, away from the driver she is leading out of the car. When she is turned towards appellant, appellant is yelling and screaming. Barrett's belt microphone is not working. However, the yelling and screaming of appellant is picked up by the microphone inside the police cruiser, although what appellant is screaming is not decipherable. Barrett turns to face appellant and watches him walk around her car. Barrett calls for backup. One minute later, Barrett states, "she can disregard." During this encounter with appellant, Barrett is focused on appellant.

{¶15} The trial court issued a judgment entry on May 25, 2018 denying appellant's motion to suppress. The trial court noted that, prior to hearing testimony, counsel for appellant withdrew all issues raised in his motion except the lawfulness of the initial detention at Tequila Cowboy and whether the horizontal gaze nystagmus test was administered in substantial compliance with NHTSA standards. The trial court stated it heard testimony from Patterson and Wheeler, and also viewed the video evidence from dash-cams located in Patterson's and Barrett's police cruisers.

{¶16} The trial court found: Patterson did not verbally threaten appellant, spoke to him in a quiet, low key manner, the encounter took place in a public place, numerous people were standing in the area and moving in and out of the building, Patterson's only

show of authority was the blinking of his overhead lights, and the encounter was prolonged by appellant's behavior and his unwillingness to be responsive to the officer's questions. The trial court thus concluded the encounter was consensual from the beginning and remained consensual until appellant left the area.

{¶17} The trial court further found that even if the encounter was not consensual, the officers possessed adequate and reliable information that appellant had committed or might commit a crime and investigative detention was warranted under the circumstances. The trial court stated that, based upon the information available to Patterson, he had reason to detain appellant to determine whether he should be charged, and Barrett had not yet completed her OVI investigation and she was entitled to complete her investigation and then discuss with the other officers whether appellant should be charged. Further, that video evidence supports the reasonableness of an obstructing charge and Barrett was justifiably concerned about appellant's behavior which caused her to delay her investigation and focus upon him because appellant appears to have alarmed Barrett and repeatedly screamed at her while she was dealing with another suspect. The trial court stated Barrett was distracted from her investigation and focused her attention on appellant for several minutes, she was concerned enough to call back up, and her "disregard" message did not imply that appellant had not hampered, impeded, or delayed her investigation. The trial court also found the HGN test was in substantial compliance with NHTSA standards.

{¶18} On July 24, 2018, a jury found appellant guilty of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and not guilty of operating a vehicle while under the influence of alcohol and refusing a chemical test while

having a prior conviction for an OVI in the past twenty years in violation of R.C. 4511.19(A)(2). The trial court sentenced appellant to ten days in jail and two years of community control.

{¶19} Appellant appeals the May 25, 2018 judgment entry of the Delaware Municipal Court and assigns the following as error:

{¶20} "I. THE TRIAL COURT ERRED BY OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

I.

{¶21} In his sole assignment of error, appellant argues the trial court erred in denying his motion to suppress.

{¶22} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

{¶23} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *Id.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 620 N.E.2d 906 (8th Dist. 1994).

{¶24} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). "However, not every contact between a police officer and citizen implicates the Fourth Amendment. Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Lopez*, 2nd Dist. Greene No. 94 CA 21, 1994 WL 527670 (Sept. 28, 1994), quoting *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶25} As we have observed, the law within the State of Ohio recognizes three types of police-citizen encounters: consensual encounters, *Terry* stops, and arrests. *State v. Stonier*, 5th Dist. Stark No. 2012 CA 00179, 2013-Ohio-2188, citing *State v. Taylor*, 106 Ohio App.3d 741, 667 N.E.2d 60 (2nd Dist. 1995).

{¶26} A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *Id.* The United States Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[M]erely approaching an individual on the street or in another public place[,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145 (6th Cir. 1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Bostick*, 501 U.S. at 434.

**{¶27}** The Ohio Supreme Court has held that a police officer's statement, "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or disregard. *State v. Smith*, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989), *reversed sub nom. Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990); *State v. Crossen*, 5th Dist. Ashland No. 2010-COA-027, 2011-Ohio-2509.

**{¶28}** In *United States v. Mendenall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the United States Supreme Court made the following observation: "[w]e conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.*

**{¶29}** A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747-48.

**{¶30}** "The second type of encounter is a '*Terry* stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration

and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions." *Id.* at 748. Such a stop is valid if the officer had reasonable and articulable suspicion of criminal activity. *Id.* at 749. However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant than intrusion. *Id.* Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980). A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminals and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88 Sections 3.12-3.19.

**{¶31}** In this case, the trial court first found the encounter was consensual from the beginning and remained so until appellant left the area. Appellant contends he was seized by Patterson, under the totality of the circumstances, because Patterson was in a marked cruiser, activated his lights, wore his uniform, yelled instructions at him, and there was the threatening presence of several officers.

**{¶32}** Upon review, under the totality of the circumstances, we conclude this was a consensual encounter such that the Fourth Amendment was not implicated. While Patterson displayed his lights and had on a uniform, he did not physically touch or threaten appellant, did not order appellant into the cruiser, did not draw his weapon, did not indicate non-compliance would lead to arrest, and did not block appellant's way.

Appellant did not ask if he was free to leave. The video shows that Patterson did not verbally threaten appellant and at all times spoke in a quiet and calm manner and attempted to reason with appellant. The encounter took place in a public area with patrons walking in and out of the establishment. While Patterson testified there were other officers present, the record does not indicate that they were close to appellant or were otherwise behaving in a threatening manner. The encounter occurred at 12:30 in the morning, and was prolonged by appellant's behavior and unwillingness to respond to questions, as he continually screamed and shouted at Patterson while Patterson was attempting to have a rational conversation with him.

{¶33} Appellant cites *State v. Romacko*, 5th Dist. Tuscarawas No. 2015 AP 0063, 2016-Ohio-1512, in support of his argument that the encounter was not consensual. In *Romacko*, we found the simple observation of the appellant leaving home in broad daylight where two drug overdoses had occurred in the past two weeks without any other furtive behavior and where the officer's language or tone of voice indicated compliance with his request might be compelled was a seizure. However, as detailed by the facts presented above, we find *Romacko* factually distinguishable from the instant case.

{¶34} Appellant also cites Patterson's testimony that he thought appellant would be in investigative custody. However, as this Court has previously stated, the officer's subjective intention is immaterial. *State v. Berry*, 5th Dist. Tuscarawas No. 2018AP060027, 2017-Ohio-8113. The subjective intent of the officer to allow the individual to leave is irrelevant; the test is objective and is based upon whether a reasonable person would have felt free to leave. *State v. Wallace*, 145 Ohio App.3d 116,

761 N.E.2d 1143 (6th Dist. 2001), citing *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶35}** The trial court further found that, even if the encounter was not consensual, the officer had adequate, reliable information that appellant committed or might commit a crime, specifically obstructing official business. Appellant argues Patterson did not have a justification for seizing him because Patterson did not have a reasonable suspicion he engaged in criminal activity. We agree with the trial court.

**{¶36}** The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Reece*, 5th Dist. Delaware No. 17 CAC 03 0019, 2018-Ohio-150, citing *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

**{¶37}** Patterson testified the information he received was that appellant had approached Barrett and yelled at her while she was doing an unrelated traffic stop and she was concerned because he seemed intoxicated. Once Patterson made contact with appellant, the encounter was prolonged by appellant's behavior. The video shows appellant walking towards Barrett with his hands in his pockets. As Barrett is taking the driver out of the car during the traffic stop, she turns towards appellant and away from the driver. Appellant is yelling and screaming as he is several feet away from Barrett. Barrett

turns to face appellant and asks for another unit because there is a man yelling at her. Barrett watches appellant walk around her car while she is attempting to deal with a suspect from another incident outside of her vehicle, delaying her investigation.

{¶38} When asked on cross-examination why Patterson thought appellant was obstructing official business, Patterson testified it was because it appeared to him that Barrett did not feel safe handling her business. Barrett did not tell Patterson she did not feel safe, but Patterson testified "she wouldn't have asked for another unit if she would have." Wheeler testified that Barrett is a very confident individual who does not normally call for back-up unless she feels she needs it and Wheeler could tell she needed it. Barrett expressed to Wheeler that she felt unsafe because appellant kept going back and forth during her stop.

{¶39} Appellant contends there was not sufficient evidence that he obstructed Barrett's investigation because, shortly after she called for backup, she radioed "she can disregard." However, as noted by the trial court, this comment does not necessarily suggest Barrett was telling all officers to disregard her request and may have been in reference to a particular person. Further, Barrett's "disregard" message does not mean appellant did not hamper, impede, or delay the investigation.

{¶40} Based upon our review of the record, we find appellee demonstrated a reasonable articulable suspicion of criminal activity. See *State v. Willey*, 5th Dist. Stark No. 2014CA00222, 2015-Ohio-4572 (finding appellant's argumentative demeanor stalled the investigation and was sufficient evidence for conviction of obstructing official business); *State v. Shepherd*, 5th Dist. Richland No. 14CA63, 2015-Ohio-4330 (finding when the focus shifted to the appellant's behavior there was sufficient evidence from

which a rational trier of fact could conclude he acted with the specific intent to prevent, obstruct, or delay the officer in his lawful duties); *State v. Saunders*, 5th Dist. Muskingum No. CT2017-0052, 2018-Ohio-2624 (finding the State demonstrated a reasonable articulable suspicion of criminal activity even though the appellant was not actually charged).

{¶41} Finally, appellant argues he was illegally seized by exercising his right to free speech. We disagree. Officers did not charge appellant with anything as a result of his initial contact with them when he was yelling and screaming at them; rather, he was charged after he got into his car and started driving. Additionally, Patterson testified the information that he had from Barrett was that appellant was yelling and screaming at her while she was trying to conduct a traffic stop and that he may be intoxicated. There is no evidence that Patterson approached appellant based on the content of his speech to Barrett or that the encounter was prolonged based upon the content of appellant's speech.

{¶42} Based on the foregoing, appellant's assignment of error is overruled.

{¶43} The May 25, 2018 judgment entry of the Delaware Municipal Court is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur