[Cite as *State v. Barnett*, 2019-Ohio-2313.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                              |
|--------------------------|---|------------------------------|
| STATE OF OHIO            | : | JUDGES:                      |
|                          | : |                              |
|                          | : | Hon. William B. Hoffman, P.J.|
| Plaintiff-Appellee       | : | Hon. Patricia A. Delaney, J. |
|                          | : | Hon. Craig R. Baldwin, J.    |
| -vs-                     | : |                              |
|                          | : | Case No. 18CA76              |
|                          | : |                              |
| RANDY KRISTOPHER BARNETT | : |                              |
|                          | : |                              |
|                          | : |                              |
| Defendant-Appellant      | : | O P I N I O N                |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
                             of Common Pleas, Case No. 2018-CR-
                             0014



JUDGMENT:                    AFFIRMED IN PART; VACATED IN
                             PART AND JUDGMENT ENTERED



DATE OF JUDGMENT ENTRY:      June 10, 2019




APPEARANCES:

For Plaintiff-Appellee:               For Defendant-Appellant:

GARY BISHOP                           WILLIAM CRANMER
RICHLAND COUNTY PROSECUTOR            470 Olde Worthington Rd., Suite 200
                                      Westerville, OH 43082
JOSEPH C. SNYDER
38 S. Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Defendant-Appellant Randy Kristopher Barnett appeals his August 9, 2018 conviction and sentence for Possession of Heroin, a fifth-degree felony in violation of R.C. 2925.11(A) and (C)(6)(a). Plaintiff-Appellee is the State of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   On January 17, 2018, Defendant-Appellant Randy Kristopher Barnett was indicted on one count of Possession of Heroin, a fifth-degree felony in violation of R.C. 2925.11(A) and (C)(6)(a). Barnett was arraigned on February 20, 2018 and he entered a plea of not guilty.

{¶3}   Barnett filed a motion to suppress on May 2, 2018. He argued the heroin seized on March 22, 2017 should be suppressed because it was obtained during a warrantless search of his person. A hearing was held on May 29, 2018 and the following evidence was adduced at the hearing.

{¶4}   On March 22, 2017, Detective Nicole Gearhart of the Mansfield Police Department METRICH Drug Enforcement Unit was on patrol in an unmarked car in a high-crime area known for drug activity. (T. 7). During the patrol, Det. Gearhart observed a known drug dealer walking in his area of residence near North Lake Park. (T. 6). Because he was a known drug dealer, Det. Gearhart watched his activity. (T. 6). While the known drug dealer was walking, Det. Gearhart observed a vehicle driving slowly nearby. Barnett was in the front passenger seat of the vehicle. (T. 6). Det. Gearhart lost sight of the vehicle, but then saw the vehicle drive out of an alley and drop off the known drug dealer. (T. 6). Det. Gearhart followed the vehicle to the parking lot of an AutoZone and she called Officer Kory Kaufman, a K9 officer of the Mansfield Police Department, to

make contact with the vehicle because based on her skills, training, knowledge, and experience, she believed a drug transaction had occurred. (T. 6, 7). Barnett's vehicle was parked and Det. Gearhart parked her vehicle in a manner in which Barnett's parked vehicle could not leave. (T. 10-11).

{¶5} Officer Kory Kaufman and his canine, Denise, of the Mansfield Police Department arrived at the AutoZone. As he parked his car, Officer Kaufman saw Barnett exit his vehicle. (T. 14). He denied parking his marked patrol vehicle to block Barnett's vehicle. Officer Kaufman exited his vehicle, left Denise in the vehicle, and asked Barnett if he could speak with him. (T. 14). Barnett did not respond. Denise had been barking loudly from inside the marked vehicle, so Officer Kaufman asked Barnett again if he could speak with him. Barnett came over to the front of Officer Kaufman's vehicle and they started speaking. (T. 14). Officer Kaufman knew that Barnett was suspected of having been associated with a drug transaction. He was concerned about officer safety and asked Barnett if he could pat him down. (T. 14). Barnett consented. (T. 14).

{¶6} Officer Kaufman conducted a pat down of Barnett. He had Barnett face the marked unit and put his hands behind his back. (T. 15). Officer Kaufman grabbed Barnett's bottom hand, so he had control of his hands and leaned Barnett forward. (T. 15). As he conducted the pat down, Officer Kaufman saw the pocket of Barnett's hoodie bulge open, which made the inside of the pocket visible to him. (T. 15). Officer Kaufman observed a small baggie containing a black or brown rock inside Barnett's hoodie pocket, which he thought was heroin. (T. 15). Officer Kaufman finished the pat down for weapons, did not discover any weapons, and pulled out the small baggie from Barnett's pocket. (T. 15). The contents of the baggie were determined to be heroin.

{¶7} On May 30, 2018, the trial court overruled Barnett's motion to suppress. The trial court found that the interaction between Officer Kaufman and Barnett was a consensual encounter followed by a consensual search. On seeing what he believed to be heroin inside Barnett's pocket, Officer Kaufman had probable cause to remove the baggie from Barnett's pocket.

{¶8} A change of plea hearing was held on June 15, 2018. Barnett changed his plea to no contest. The State recommended community control. The trial court ordered a presentence investigation before sentencing.

{¶9} The trial court held the sentencing hearing on August 8, 2018. The trial court stated the presentence investigation report showed Barnett owed $80.00 in lab fees to the Mansfield Police Department Crime Lab. (T. 37). The trial court found Barnett guilty of Possession of Heroin. It sentenced Barnett to six months in prison and three years of discretionary postrelease control. It ordered Barnett to pay restitution in the amount of $80.00 to the Mansfield Police Department Crime Lab. (Sentencing Entry, August 9, 2018).

{¶10} It is from the August 9, 2018 Sentencing Entry that Barnett now appeals.

## ASSIGNMENTS OF ERROR

{¶11} Barnett raises two Assignments of Error:

{¶12} "I. THE TRIAL COURT VIOLATED APPELLANTS' RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE U.S. AND OHIO CONSTITUTIONS BY DENYING THE MOTION TO SUPPRESS.

{¶13} "II. THE TRIAL COURT DID NOT HAVE THE LEGAL AUTHORITY TO ORDER RESTITUTION PAYABLE TO THE LOCAL POLICE CRIME LAB."

**ANALYSIS**

**I. Consent**

{¶14} Barnett argues in his first Assignment of Error that the trial court should have granted his motion to suppress because the totality of the circumstances demonstrated Barnett's encounter with Officer Kaufman and subsequent search by the officer were not consensual. We disagree.

{¶15} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713 N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

{¶16} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486,

597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams*, *supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**Consensual Encounter**

{¶17} This Court has observed the law within the State of Ohio recognizes three types of police-citizen encounters: (1) consensual encounters, (2) *Terry* stops, and (3) arrests. *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC 07 0055, 2019-Ohio-3, ¶ 25 citing *State v. Stonier*, 5th Dist. Stark No. 2012 CA 00179, 2013-Ohio-2188, citing *State v. Taylor*, 106 Ohio App.3d 741, 667 N.E.2d 60 (2nd Dist. 1995). In this case, the trial court found Barnett consented to the encounter and search by Officer Kaufman.

{¶18} In *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC 07 0055, 2019-Ohio-36, we reviewed what constitutes a "consensual encounter." A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation, requests information, and the person is free to refuse to answer and walk away. *State v. Taylor, supra.* The United States Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[M]erely approaching an individual on the street or in another public place[,]" seeking to ask questions for voluntary, uncoerced

responses, does not violate the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145 (6th Cir. 1990). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Moreover, he may not be detained even momentarily for his refusal to listen or answer. *Id.* So long as a reasonable person would feel free "to disregard the police and go about his business," *California v. Hodari D*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. *Bostick*, 501 U.S. at 434.

{¶19} The Ohio Supreme Court has held that a police officer's statement, "Hey, come here a minute," while nominally couched in the form of a demand, is actually a request that a citizen is free to regard or disregard. *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC 97 0055, 2019-Ohio-36, ¶ 27 citing *State v. Smith*, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989).

{¶20} In *United States v. Mendenall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, the United States Supreme Court made the following observation: "[w]e conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening

presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled. *Id.*

{¶21} A consensual encounter does not implicate the Fourth Amendment's protection against unreasonable searches and seizures unless the police officer has restrained the person's liberty by a show of authority or physical force such that a reasonable person would not feel free to decline the officer's request or otherwise terminate the encounter. *Id.* at 747-48.

{¶22} Barnett argues that under the totality of the circumstances, he was seized by Officer Kaufman because there were multiple officers present, Officer Kaufman was in a marked cruiser and wore his uniform, and Officer Kaufman asked to speak with Barnett twice, the second time raising his voice because Denise was barking loudly from the cruiser. The appellant in *State v. Yacobucci* raised a similar argument under comparable circumstances, stating such an encounter could not be consensual. *State v. Yacobucci*, 2019-Ohio-36, ¶ 31. We disagreed with the appellant, finding under the totality of the circumstances, the appellant's encounter was consensual such that the Fourth Amendment was not implicated. *Id*. at ¶ 32. "While Patterson displayed his lights and had on a uniform, he did not physically touch or threaten appellant, did not order appellant into the cruiser, did not draw his weapon, did not indicate non-compliance would lead to arrest, and did not block appellant's way. Appellant did not ask if he was free to leave." *Id.*

{¶23} In the present case, there was no testimony that Officer Kaufman displayed the lights on his patrol unit. There was no evidence that Officer Kaufman threatened

Barnett, drew his weapon, or indicated that non-compliance would lead to arrest. Officer Kaufman asked to speak with Barnett twice, the second time raising his voice to be heard over Denise barking in the patrol unit. Denise was secured inside the vehicle and there was no evidence that Officer Kaufman threatened to release the dog from the vehicle if Barnett did not comply with his request. The encounter took place in the parking lot of an AutoZone, a public area. Det. Gearhart was present, but record does not indicate that she was close to Barnett or was behaving in a threatening manner.

{¶24} Under the totality of the circumstances, we find this was a consensual encounter such that the Fourth Amendment was not implicated.

### Protective Search

{¶25} The trial court next found that Officer Kaufman's protective search of Barnett was likewise consensual.

{¶26} It is well-established that warrantless searches, i.e., "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." (Footnote omitted.) *State v. Orosz*, 11th Dist. No. 2016-L-057, 2017-Ohio-707, 86 N.E.3d 50, ¶ 25 quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.E.2d 576 (1967).

{¶27} One such exception to a warrantless search is known variously as a protective search, "patdown," or "stop and frisk." The exception entails "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.* at ¶ 26 citing *Terry v. Ohio,* 392

U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

{¶28} Officer Kaufman responded to the scene based on information from Det. Gearhart that a possible drug transaction involving Barnett had taken place. The location he was responding to was a known high crime area with drug activity. (T. 7). Officer Kaufman testified that based on his skills, training, and experience, he was aware that people involved in drug transactions often carry weapons. (T. 14). When he spoke with Barnett, Officer Kaufman was concerned about officer safety. (T. 14). Officer Kaufman testified he asked Barnett if he minded if he patted him down. (T. 14). Officer Kaufman stated Barnett told him to go ahead. (T. 14).

{¶29} In this case, we find the trial court did not err to find the protective search was consensual. We next find that if not consensual, the protective search was reasonable based on the circumstances of the scene. Officer Kaufman was speaking with an individual possibly involved in a drug transaction in a known high crime area. The inferences drawn by Officer Kaufman based on his experience were reasonable under the circumstances.

{¶30} Barnett's first Assignment of Error is overruled.

## II. Restitution vs. Costs

{¶31} At the August 8, 2018 sentencing hearing, it appears from the transcript that the trial court reviewed Barnett's presentence investigation report that showed Barnett owed $80.00 in lab fees to the Mansfield Police Department Crime Lab. (T. 37). While not specifically stated in the record, the parties do not contest the inference that the lab fees were the cost of testing the black or brown rock in the plastic baggie found in Barnett's hoodie pocket on March 22, 2017. The rock was determined to be heroin, leading to Barnett's charge, conviction, and sentence for Possession of Heroin.

{¶32} In its August 9, 2018 Sentencing Entry, the trial court ordered Barnett to pay restitution in the amount of $80.00 to the Mansfield Police Department Crime Lab. Barnett argues in his second Assignment of Error that the trial court was without authority to award restitution to the Mansfield Police Department Crime Lab for the cost of lab fees because the Mansfield Police Department Crime Lab is not a "victim." We agree but find the error harmless pursuant to R.C. 2925.511.

{¶33} As part of a defendant's felony sentence, R.C. 2929.18(A)(1) allows a trial court to order restitution "by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." If the court imposes restitution, the statute further provides that restitution may be made "to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court." *State v. Cartwright*, 12th Dist. Fayette No. CA2016-11-018, 2017-Ohio-7212, ¶ 10, appeal not allowed, 152 Ohio St.3d 1409, 2018-Ohio-723, 92 N.E.3d 880, 2018 WL 1093936, ¶ 10 (2018). R.C. 2929.18 does not define "victim." *Id.* at ¶ 12.

{¶34} It has been held that law enforcement or other governmental agencies are not entitled to restitution on the ground the agencies are not victims under R.C. 2930.01(H)(1) or are simply expending funds or incurring expenses in the performance of their duties. *Id.* at ¶ 16 citing *State v. Toler*, 174 Ohio App.3d 335, 2007–Ohio–6967 (3rd Dist.) (sheriff's office not entitled to restitution for costs incurred in extraditing defendant; restitution available only to the actual victim of the offense); *State v. Steward*, 6th Dist. Lucas No. L–14–1083, 2015–Ohio–3081 (state conceded restitution to dog warden for defendant's dogs' boarding and medical expenses was improper; dog warden was not a victim under R.C. 2930.01 [H] ); *State v. Samuels*, 4th Dist. Washington No. 03CA8, 2003–Ohio–6106 (sheriff's office not entitled to restitution for voluntarily spending its own funds to pursue a drug buy); *Hunter*, 2013–Ohio–3759 (fire department not entitled to restitution for arson investigatory expenses; fire department was not a victim under R.C. 2930.01[H][1] ); and *State v. Wolf*, 176 Ohio App.3d 165, 2008–Ohio–1483 (3rd Dist.) (fire departments not entitled to restitution for expenses incurred in conjunction with an arson fire; fire departments were not the victims of defendant's arson offense).

{¶35} In this case, the parties do not dispute the lab fees due to the Mansfield Police Department Crime Lab were based on expenses incurred in the performance of its public duty. While the Mansfield Police Department Crime Lab was not a "victim" under R.C. 2929.18(A)(1) for the purposes of restitution, the trial court had statutory authority to order Barnett to reimburse the Mansfield Police Department Crime Lab for the lab fees. R.C. 2925.511 authorizes a sentencing court to order an offender to reimburse law enforcement agencies for the costs of tests to identify the controlled substance at issue in a drug possession offense, so long as the test comes back positive. The statute reads:

In addition to the financial sanctions authorized or required under sections 2929.18 and 2929.28 of the Revised Code and to any costs otherwise authorized or required under any provision of law, the court imposing sentence upon an offender who is convicted of or pleads guilty to a drug abuse offense may order the offender to pay to the state, municipal, or county law enforcement agencies that handled the investigation and prosecution all of the costs that the state, municipal corporation, or county reasonably incurred in having tests performed under section 2925.51 of the Revised Code or in any other manner on any substance that was the basis of, or involved in, the offense to determine whether the substance contained any amount of a controlled substance if the results of the tests indicate that the substance tested contained any controlled substance. No court shall order an offender under this section to pay the costs of tests performed on a substance if the results of the tests do not indicate that the substance tested contained any controlled substance.

The court shall hold a hearing to determine the amount of costs to be imposed under this section. The court may hold the hearing as part of the sentencing hearing for the offender.

R.C. 2925.511.

{¶36} Pursuant to R.C. 2925.511, the trial court was permitted to order Barnett to reimburse the Mansfield Police Department Crime Lab for the costs of the tests performed on the contents of the baggie found on Barnett's person because the tests indicated the contents of the baggie were a controlled substance, heroin. We find it was error for the

trial court to order Barnett to pay "restitution" instead of "costs" to the Mansfield Police Department Crime Lab because it was not a "victim" entitled to restitution under R.C. 2929.18(A)(1). The error, however, was harmless considering R.C. 2925.511.

{¶37} We vacate the portion of the trial court's August 9, 2018 sentencing entry ordering Barnett to pay restitution in the amount of $80.00 to the Mansfield Police Department Crime Lab. Pursuant to our authority under App.R. 12(B), we enter judgment that Barnett shall pay court costs and fees permitted pursuant to R.C. 2929.18 and R.C. 2925.511, including $80.00 to the Mansfield Police Department Crime Lab.

{¶38} Barnett's second Assignment of Error is sustained and overruled in part.

## CONCLUSION

{¶39} The judgment of the Richland County Court of Common Pleas is affirmed in part, vacated in part, and judgment rendered pursuant to App.R. 12(B).

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.