[Cite as *State v. Martin*, 2019-Ohio-2517.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ANTONIO MARTIN | : | Case No. 18 CAC 07 0054 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the County Municipal
                               Court, Case No. 17TRC22038


JUDGMENT:                      Affirmed


DATE OF JUDGMENT:              June 21, 2019


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MELISSA A. SCHIFFEL                       APRIL F. CAMPBELL
70 North Union Street                     545 Metro Place South
Delaware, OH  43015                       Suite 100
                                          Dublin, OH  43017

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Antonio Martin appeals the March 12, 2018 judgment of the Delaware County, Ohio Municipal Court denying his motion to suppress, as well as the court's judgment of conviction and sentence issued June 21, 2018. Plaintiff-Appellee is the state of Ohio.

### STATEMENT OF THE CASE AND FACTS

{¶ 2}   In the early morning hours of December 1, 2017, an identified caller contacted Delaware County 911 to report he was stopped behind a Volkswagen hatchback at a stop sign at the intersection of Big Walnut and Old 3C Highway. The caller reported that the Volkswagen had been stationary for at least two minutes. The caller was concerned that something was wrong with the driver, later identified as appellant, who appeared to be the sole occupant of the vehicle. As the caller spoke with the dispatcher, the driver slowly moved forward into the parking lot of a closed business and stopped. The caller remained on the scene.

{¶ 3}   At the same time appellant stopped his vehicle in the parking lot, Genoa Township police officers Michael Sigman and Steve Kensinger arrived at the scene and activated their overhead cruiser lights.  As they did, appellant was in the process of getting out of his car and became immediately confrontational with officers. Sigman ordered appellant to get back in his car, but appellant refused. Asked for identification appellant initially refused, then took his identification out of his wallet and put it on the roof of the Volkswagen while making comments about police officers killing black people. Sigman noted appellant's speech was slurred. As he moved closer to appellant, he noted he smelled strongly of alcohol.

{¶ 4}   Appellant remained loud, combative, and rude. Officers attempted to administer field sobriety tests, but appellant was unable to follow directions. He was unsteady on his feet, and unable to recite the alphabet. Based on Sigman's training and experience, appellant appeared to be highly intoxicated. Appellant was taken into custody. He later refused to take a breath test.

{¶ 5}   Based on these events, appellant was charged with driving under the influence, a third offense in 10 years, a misdemeanor of the first degree, and refusing a chemical test, also a misdemeanor of the first degree.

{¶ 6}   Appellant filed a motion to suppress, alleging in part that officers had no lawful basis to detain him at the scene. On January 30, 2019, a hearing was held on the motion. On March 12, 2018, the trial court issued its judgment entry denying appellant's motion to suppress.

{¶ 7}   The matter proceeded to a jury trial on June 21, 2018, at the conclusion of which appellant was found guilty as charged.

{¶ 8}   Appellant filed an appeal and the matter is now before this court for consideration. He raises two assignments of error:

I

{¶ 9}   "MARTIN'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED: WHILE THE ANONYMOUS TIP WAS RELIABLE IN ITS IDENTIFICATION OF MARTIN; IT WAS NOT RELIABLE IN ITS ASSERTION OF ILLEGALITY TO JUSTIFY DETAINING HIM."

II

{¶ 10} "MARTIN'S CONVICTIONS SHOULD BE REVERSED: THE TRIAL COURT DENIED MARTIN'S FOR CAUSE CHALLENGE WHEN IT SHOULD HAVE GRANTED, WHICH FORCED HIM TO USE A PEREMPTORY TO STRIKE THAT JUROR, THEREBY GRANTING MARTIN ONE LESS PEREMPTORY THAT HE WAS ENTITLED."

I

{¶ 11} In his first assignment of error, appellant argues he was illegally detained by officers because the information provided to dispatch by the 911 caller provided no proof that appellant was engaging in criminal activity. We disagree.

{¶ 12} As stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to

the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 13} As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 14} No traffic stop occurred here as appellant was already parked in the lot of a closed business and was exiting his vehicle as officers arrived.

{¶ 15} Interactions between citizens and law enforcement officers can fall within three distinct categories: a consensual encounter, an investigative detention, and an arrest. *State v. Taylor*, 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60(1995).

{¶ 16} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *Taylor* at 747, 667 N.E.2d 60, citing *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id.* at 747-748, 667 N.E.2d 60.

{¶ 17} An investigatory stop is also known as a "Terry stop." In *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even

though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶ 18} In the case sub judice, the 911caller was not anonymous as alleged by appellant, but rather identified. As noted by the Supreme Court of Ohio in *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999):

> [A]n identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: "[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Illinois v. Gates*, 462 U.S. [213] at 233-234, 103 S.Ct. [2317] at 2329-2330, 76 L.Ed.2d [527] at 545 [ (1983) ].

{¶ 19} However, as noted by the Maumee court at 302, "categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this

informant's tip, weighing in favor of the informant's reliability and veracity." The *Maumee* court went on to find that the citizen informant had relayed an eyewitness account of a crime and therefore the dispatch based on the call justified the officer's investigatory stop.

{¶ 20} In *State v. Whitacker*, 6th Dist. Wood No. WD-13-061, 2014-Ohio-2220, 2014 WL 2170434, ¶ 20, the Sixth District summarized a prior decision, *State v. Sabo* as follows:

> This court has examined when an informant's telephone call was sufficient to establish a reasonable basis to believe that an individual was driving under the influence of alcohol. *State v. Sabo*, 6th Dist. Lucas No. L-08-1452, 2009-Ohio-6979. In *Sabo*, a citizen informant contacted police with a description of the defendant from observing him in a gas station convenience store. Id. at ¶ 2. The informant also relayed the location, model, make, color and license plate number of his vehicle. *Id.* Most importantly, the informant gave his name and contact information and visually observed appellant going into a nearby restaurant and kept him in sight until police arrived. Id. Meanwhile, a second identified citizen informant telephoned after observing appellant at the drive-thru window of the restaurant. *Id.* at ¶ 3. Affirming the court's denial of appellant's motion to suppress we noted that, based upon the totality of the circumstances which included "identified citizen informants" combined with their observations of appellant staggering, slurring his speech with "weird

eyes" and the information regarding his vehicle and location, the officer had reasonable suspicion to effectuate the warrantless stop.

Id. at ¶ 21.

{¶ 21} The *Sabo* court found the citizen informants relayed facts giving rise to a reasonable suspicion of driving while impaired warranting an investigatory stop.

{¶ 22} Additionally, in *Navarette v. California*, 134 S.Ct. 1683, 1688-1690, 188 L.Ed.2d 680 (2014), the United States Supreme Court found that a caller's use of the 911 emergency system is another indicia of veracity. *Id.* The Court found in general, tips received through 911 calls are more reliable because 911 callers can be identified through tracing and recording, and false calls are subject to prosecution. *Id.* Therefore, "a reasonable officer could conclude that a false tipster would think twice before using such a system," thus enhancing the reliability of 911 calls. *Id.* at 1690.

{¶ 23} The state argues the stop was consensual, but failing that, argues officers still had adequate suspicion to justify detaining appellant. Appellant argues the informant's report of appellant sitting motionless at a stop sign provided no evidence that he was engaged in any illegal activity.

{¶ 24} We find the initial encounter here was consensual. Although officers activated their overhead lights before approaching appellant, there was no other show of authority, and appellant was not restrained from leaving the area. See *State v. Yacobucci*, 5th Dist. Delaware No. 18 CAC07 0055, 2019-Ohio-36 ¶32 However, based on appellant's behavior, the stop quickly became an investigative detention.

{¶ 25} We nonetheless agree with the state that officers possessed sufficient information to justify an investigative detention. Information from the identified 911 caller

indicated appellant had been stationary at a stop sign for a lengthy period of time, then drove very slowly into the parking lot of a closed business. The caller remained on the scene for the duration of the stop. When the officers arrived, they found appellant had parked and exited his car. Appellant immediately engaged officers in a challenging and belligerent fashion, while slurring his speech. T. 9-12. Appellant's own actions further solidified a suspicion of impaired driving. We find the totality of the circumstances here warranted the investigatory detention.

{¶ 26} Appellant's first assignment of error is overruled.

II

{¶ 27} In his second assignment of error, appellant argues the trial court erred when it denied his challenge for cause to excuse Juror Lemaster, forcing appellant to use a peremptory challenge. We disagree.

{¶ 28} Crim.R. 24(C)(9) and R.C. 2945.25(B) provide that a person called as a juror may be challenged for cause when:

> * * *the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

{¶ 29} Trial courts have discretion in determining a juror's ability to be impartial. *State v. Williams*, 6 Ohio St.3d 281, 288, 6 OBR 345, 351, 452 N.E.2d 1323 (1983). " * * *However, a 'ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary* * *so as to constitute an abuse of discretion.' *State v. Tyler*, 50 Ohio St.3d 24, 31, 553 N.E.2d 576 (1990). Accord *Williams*, 79 Ohio St.3d at 8, 679 N.E.2d at 654." *State v. Nields*, 93 Ohio St.3d 6, 20, 2001-Ohio-1291, 752 N.E.2d 859.

{¶ 30} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 31} During vior dire, under questioning by the state, juror LeMaster indicated "[t]he fact that he didn't take the test bothers me * * * I think he's probably guilty." T. 82. Asked if he could evaluate the evidence presented and decide the matter based upon the instructions provided by the court, LeMaster responded "I can try." T. 83. Questioned by counsel for appellant, LeMaster again stated that if appellant refused to submit to a breath test, he was probably guilty. T. 87.

{¶ 32} Counsel for appellant challenged LeMaster for cause. T. 90. The trial court then addressed LeMaster:

> The Court: - - you indicated what everybody heard you indicate. At the end of this case, the jury instructions are going to be that you have to base your decision on all of the evidence and not just one single piece of evidence. And you've exhibited - - you've indicated

that there is one piece of evidence that would probably sway you
heavily.

Do you think you can listen to the Court's instructions on the
evaluation of evidence and how you are to treat the evidence and
consider all of the evidence in making your decision at the end of the
day without being prejudiced or biased by one piece of evidence,
which is the possibility that the Defendant didn't take the test?

[LeMaster] - - I think I can.


{¶ 33} T. 92. While LeMaster's response is ambigus on a cold transcript, the trial
court observed LeMaster's response. Deference must be given to the trial judge who sees
and hears the juror. *State v. Nields*, 93 Ohio St.3d 6, 21, 2001-Ohio-1291, 752 N.E.2d
859.

{¶ 34} Even assuming arguendo the trial court should have granted appellant's
challenge for cause, our evaluation centers on whether appellant was denied a fair and
impartial jury. We find he was not. As recently noted by the Eleventh District in *State v.
Gipson*, 11th Dist. Lake No. 2018-L-093, 2019-Ohio-1165 ¶ 14:

"[T]he relevant inquiry * * * is ' "whether the composition of the jury
panel as a whole could possibly have been affected by the trial
court's error." ' " (citations omitted) *State v. Broom*, 40 Ohio St.3d
277, 287 (1988). Thus, in order for a constitutional violation to occur,
the defendant must have used all of his peremptory challenges and

be able to demonstrate that one of the jurors seated was not impartial and that juror in question must have been challenged for cause. *Id.* Otherwise, "he is presumed to be impartial and the defendant was not forced to use a peremptory challenge." *Id.*, quoting *Broom*, supra.

{¶ 35} Here, after his challenge for cause was denied, counsel for appellant exercised a peremptory challenge to remove LeMasters, and still had one peremptory challenge remaining. None of the ultimately empaneled jurors were challenged by appellant, nor has appellant argued here that an empaneled juror would have been removed had he not exhausted his peremptory challenges. Appellant was therefore not denied his right to a fair and impartial jury by being forced to use a peremptory challenge.

{¶ 36} Finally, appellant mentions in a cursory fashion that the state was permitted to exercise an extra peremptory challenge. Appellant does not expand on this notion, nor does he point us toward the point in the transcript where this allegedly occurred. Our own examination of the record indicates the state and appellant each received three peremptory challenges and the state exercised only one.

{¶ 37} The final assignment of error is overruled.

{¶ 38} The judgment of the Delaware County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/rw